**PUGET SOUND BRIDGE & DREDGING COMPANY**

v.

**The UNITED STATES.**

No. 668-53.

United States Court of Claims.

Decided April 5, 1955.

John M. Martin, Beverly Hills, Cal., for plaintiff. Frank L. Martin, Jr., Beverly Hills, Cal., was on the briefs.

Kendall M. Barnes, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant. John B. Miller, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

This action is brought to recover the difference between the contract price specified for common excavation and that specified for rock excavation with respect to some 21,417 cubic yards of material which plaintiff alleges was erroneously classified as "common" by the contracting officer. Plaintiff appealed this determination to the head of the department, who affirmed it.

Plaintiff also seeks the remission of liquidated damages for delay of $8,700 assessed against it by the contracting officer. This question was also decided adversely to plaintiff by the head of the department.

Under date of April 30, 1947, plaintiff entered into contract W45–108–eng–1792 for certain dredging and rock removal in Wrangell Narrows, Alaska. The contract, which was a unit-price contract, showed an estimated 47,300 cubic yards of ledge rock to be removed, for which plaintiff bid $12.50 a cubic yard, and 455,800 cubic yards of "dredging and disposal other than ledge rock," for which plaintiff bid $1.40 a cubic yard.

The contract required that work be commenced within 90 days after receipt of notice to proceed, and be completed by July 1, 1949, plus one additional day for each 150 cubic yards of ledge rock or 1,800 cubic yards of other excavation in excess of the estimated quantities. Plaintiff's time of completion was first extended to November 1, 1949, because of the loss of its dredge by fire. When its replacement dredge was lost at sea, the date for completion was further extended to January 31, 1950. Work was not completed until April 18, 1950, 77 days after the completion date as so extended. However, plaintiff was entitled to a 19-day time extension because of a quantity overrun, so that liquidated damages were assessed against it for a delay of 58 days.

The original contract had covered only the portion of Wrangell Narrows from Mile 0.00 to Mile 13.00. When this work was substantially completed, it became apparent that the quantities of material removed would be a great deal less than had originally been estimated. The contract was thereupon amended to provide for additional dredging by plaintiff in areas where prior surveys showed rock as far as Mile 18.03. The quantities of work performed in this additional area were measured in the same fashion, and paid for at the same rates, as was the work originally specified. Plaintiff raises no question as to these quantities, its only complaint relating to those covered by the original contract.

In total, plaintiff removed and was paid for 72,760.43 cubic yards of ledge rock and 224,867.08 cubic yards of other excavation.

With respect to the work covered by the original contract, the situation is as follows:

| Location | | Engineers' quantities of rock | | Plaintiff's claim |
|---|---|---|---|---|
| Mile | Local name | Estimated | Removed | |
| 0.10 to 0.16.... | Topeak Rock. | 12,400 | 10,704.04 | 10,704.04 |
| 0.38 to 0.64.... | Shoal No. 1.. | 1,600 | 5,787.78 | 9,153.70 |
| 1.35 to 2.44.... | Shoal No. 2.. | [1] 0 | 4,014.43 | 6,921.48 |
| 12.00 to 13.00.. | Green Rocks. | 33,300 | [2] 10,442.14 | 24,233.31 |
| Total .... | .............. | 47,300 | 30,948.39 | 51,012.53 |

[1] On Shoal No. 2, no probings had been made prior to award.
[2] Plaintiff dredged only to Mile 12 plus 3,685 feet.

Plaintiff filed its petition in this court on December 15, 1953, and on November 2, 1954, plaintiff filed motion for summary judgment in accordance with the provision of rule 51 of the Rules of this court, on the grounds that the pleadings and records on file herein show that there is no genuine issue as to any material fact and that the plaintiff is entitled to judgment as a matter of law.

On January 14, 1955, defendant filed cross-motion for summary judgment on the grounds that there is no genuine issue as to any material fact relating to the finality and conclusiveness of the decision of the head of the department on

plaintiff's appeal to him. Defendant further moves that plaintiff's motion for summary judgment be denied on the ground that the same is supported by neither the facts nor the law.

Both plaintiff and defendant rely upon the pleadings filed and on the documents which were received in evidence at a pretrial conference held on September 10, 1954.

It is in this posture the case comes before this court.

Plaintiff contends that because in the original survey of the Wrangell Narrows Channel (Culbertson Survey) made in 1938, a 100-pound jet was used in probing for rock and that in preparing specifications and drawings upon which bids were invited, the contracting officer was required to use a 100-pound jet on the actual job to measure contract quantities. Further, that when the contracting officer and the head of the department based their decision upon probings made with a jet having a greater capacity, they placed an erroneous construction on the contract and that their decision, being one of law, is not binding upon the parties or the court.

It is defendant's position that plaintiff's construction of the contract is not supported by the language of the contract nor by the facts now before the court. Further, that no provision of the contract specified the instrument to be used in making probings for rock, and other contract provisions made it clear that the Government was not bound by the 1938 survey and further defined type of material to be classified and paid for as rock. The contracting officer made his determination of the quantities of material excavated and paid for such in accordance with the specific terms of the contract. At the hearing on the appeal from the contracting officer's decision plaintiff did not call witnesses or produce documents. Plaintiff, on its appeal to the head of the department, accepted the facts so found as conclusive.

With respect to the contention of plaintiff, the following provisions of the specifications are material:

"GC–3. *Site Investigation and Representations.*—The Contractor acknowledges that he had satisfied himself as to the nature and location of the work, the general and local conditions, particularly those bearing upon transportation, disposal, handling and storage of materials, availability of labor, water, electric power, roads and uncertainties of weather, river stages, tides or similar physical conditions at the site, the conformation and condition of the ground, the character, quality and quantity of surface and subsurface materials to be encountered, the character of equipment and facilities needed preliminary to and during the prosecution of the work and all other matters which can in any way affect the work or the cost thereof under this contract. Any failure by the Contractor to acquaint himself with all the available information concerning these conditions will not relieve him from responsibility for estimating properly the difficulty or cost of successfully performing the work. The Government assumes no responsibility for any understanding or representations made by any of its officers or agents during or prior to the negotiation and execution of this contract, unless (1) such understanding or representations are expressly stated in the contract and (2) the contract expressly provides that responsibility therefor is assumed by the Government. Representations made but not so expressly stated and for which liability is not expressly assumed by the Government in the contract shall be deemed only for the information of the Contractor and the Government will not be liable or responsible therefor.

\*    \*    \*    \*    \*

"SC–1. *Commencement, Prosecution and Completion.—(a)* The Contractor will be required to commence work under the contract within 90 calendar days after the date of receipt of notice to proceed, to prosecute the said work with faithfulness and energy and to complete it not later than 1 July 1948 if a one-year contract, or 1 July 1949 if a two-year continuing contract, provided, that should the total quantity of material to be paid for actually removed under the contract exceeds the quantity estimated in 'SC–2, Quantity of Material', additional time will be allowed at the rate of one calendar day for each 150 cubic yards of rock and one calendar day for each 1800 cu. yds. of material other than rock in excess of such estimated quantity. In case of failure on the part of the Contractor to complete the work within the time thus determined, plus any extensions duly granted under the terms of the contract, the Contractor shall pay the Government as liquidated damages the sum of $150.00 for each calendar day of delay until the work is completed or accepted.

"(b) No work will be required during the period between 15 December and 15 March inclusive. At the discretion of the Contractor, work may be performed during all or any part of this period, upon giving prior written notice thereof to the Contracting Officer; but whether or not work is performed, no part of the period above designated will be considered in computing the time allowed for completion.

"If, however, the Contractor elects to work during any part of the period above named, and the monthly average work accomplished is any percentage less than the average monthly work necessary to complete the contract within the time specified, and the Contracting Officer maintains an inspection force during this time for the purpose of supervising the work, the Contractor will be charged this same percentage of the cost of maintaining such inspection force.

\*　　\*　　\*　　\*　　\*

"SC–2. *Quantity of Material.—* The total estimated quantity or quantities of material necessary to be removed from within the specified limits, exclusive of allowable overdepth, to complete the work hereunder are as follows:

*Quantities (place measurement) for 1 year contract*

| Mile | Ledge rock, cubic yards | Other than ledge rock, cubic yards |
|---|---|---|
| 0.10 to 0.16 | 9,000 | 0 |
| 0.38 to 0.64 | 700 | 12,700 |
| 1.35 to 2.44 | 0 | 72,900 |
| 9.51 to 9.69 | 0 | 6,400 |
| 9.92 to 10.10 | 0 | 5,800 |
| 10.15 to 10.53 | 0 | 16,900 |
| 10.79 to 10.88 | 0 | 4,300 |
| 12.00 to 12.24 | 3,050 | 27,800 |
| Total for 1-year contract | 12,750 | 146,800 |

ADDITIONAL QUANTITIES FOR 2-YEAR CONTINUING CONTRACT

| | Ledge rock, cubic yards | Other than ledge rock, cubic yards |
|---|---|---|
| 12.24 to 13.00 | 16,750 | 228,300 |
| Total for 2-year continuing contract | 29,500 | 375,100 |

\*　　\*　　\*　　\*　　\*　　\*

"SC–4. *Contract Drawings, Maps and Specifications.—*

\*　　\*　　\*　　\*　　\*

"The work shall conform to the following contract drawings and maps, all of which form a part of these specifications and are available in the Seattle District Office, Corps of Engineers, at 1400 Textile Tower, Seattle 1, Washington.

Map or Contract Drawing No. Q–3–2–36 (Sheets 1–5). Description, Wrangell Narrows, Alaska, Proposed Dredging and Rock Removal.

"SC–5. *Physical Data.—*Any statements or data furnished herein by the Government is made available only for the information of the

Contractor, and the Government assumes no responsibility therefor.

\* \* \* \* \*

"(b) *Condition of Channel.*—The existing ship channel through Wrangell Narrows has been improved to provide a channel 200 feet wide and 21 feet deep at mean lower low water, with increased depth in rock, and 27 feet deep from mile 2.08 to mile 2.70; 24 feet deep and 275 feet wide from mile 0.0 to mile 0.39; the easing of curves at mile 12.20, mile 1320, mile 13.6 and at mile 17.2. The condition of the channel when last surveyed is shown on map referred to in paragraph SC–4.

\* \* \* \* \*

"TP—1. *Character of Materials:* Probings made by the United States to determine the limits of ledge rock to be removed are shown on sheets Nos. 2 to 7 of the maps referred to in paragraph SC–4.

"The United States does not guarantee that other materials will not be encountered nor that the proportions of the several materials will not vary from those indicated by the explorations. Bidders are expected to examine the site of the work, and also the logs of the probings, which are available at Seattle District, Corps of Engineers, 1400 Textile Tower, Seattle 1, Washington, and, after investigation, decide for themselves the character of the materials and make their bids accordingly. In the execution of the work prescribed in paragraph SW–1(a), all materials of the character developed by the explorations, in whatever proportions they may be encountered, or as otherwise above described, and all other materials which, in the opinion of the contracting officer, can be removed and disposed of with substantially equal facility by the plant stated in the acceptance bid, shall be removed and disposed of by the contractor at the contract price (see paragraph TP–6).

"If materials, structures, or obstacles of a substantially different character are encountered in the execution of the prescribed work and the cost of their removal or satisfactory treatment obviously would be, in the opinion of the contracting officer, either in excess of, or less than the contract price, the contracting officer, in either alternative, will then proceed in accordance with the provisions of Article 4 of the contract."

■ It is clear from the foregoing provisions that the Government made no affirmative representation that probings under the contract would be made with any particular type of equipment, or that they would be made with the same type equipment as used in the Culbertson Survey of 1938.

Under paragraph GC–3, the duty was on the contractor to acquaint himself with all available information. Paragraph SC–5 provided that the data furnished by the Government was "made available only for the information of the contractor, and the Government assumes no responsibility therefor." Again in paragraph TP–1 "the United States does not guarantee that other materials will not be encountered nor that the proportions of the several materials will not vary from those indicated by the explorations." Under all these conditions the plaintiff entered into the contract.

Thus it is clear that the Government did not warrant or represent that rock would be encountered at the same point or in the same quantities as was shown by the 1938 survey. In fact, the 1938 survey was to determine the nature of the work to be done and a rough estimate of the cost of the work. By the very nature of the work, conditions could and undoubtedly did change between the time of the 1938 survey and the time of the actual dredging. For this reason the Government went to great length to avoid making any representations which would bind it and the contract was drawn accordingly.

Plaintiff contends "that defendant has no more right to change the criteria for classifications for payment from that on which plaintiff bid than it has to change the contract unit price."

The short answer to this contention is that the defendant did not change the criteria for classification for payment from that on which plaintiff bid.

Paragraph TP–6 provided:

"*Work Covered by Contract Price.*—* * * Material to be classified as ledge rock must be of such composition as, in the opinion of the contracting officer, shall require blasting or the use of special plant for its removal, and shall not include wrecks, snags, stumps, piles, and fragments of rock or boulders capable of being removed by the dredge in one piece. * * *"

This defined "ledge rock" not on the basis of a probe or jet of specified capacity, but on the basis of the method required for its removal. If it could be removed without blasting or without the use of a special plant and equipment, it was not ledge rock. All areas classified by the contracting officer as "common" with the 270-pound jet were removed by plaintiff without blasting, by the use of a dipper dredge, which was the only excavating equipment it had on the site. Inasmuch as plaintiff had but one piece of equipment on the site, it would seem strange indeed to now say the removal of material required something "special or different." It would also be significant that plaintiff accepted a modification which materially increased the area to be dredged and removed rock from those areas at the same unit price on the basis of the 270-pound jet probings, without protest or claim.

Thus, if as plaintiff contends the issue presented here is one of law, the facts alleged together with the exhibits do not establish that defendant has breached the contract by the use of the 270-pound jet probe instead of the 100-pound jet probe as used in the 1938 survey, and plaintiff would not be en-titled to recover on this item of its claim.

Plaintiff's second item of its claim is for remission of liquidated damages for delay, in the sum of $8,700, which was assessed against it by the contracting officer. Plaintiff's contention is based on the proper interpretation of paragraph SC–1 of the specifications.

The contracting officer has charged plaintiff with liquidated damages for the period February 20, 1950, to March 15, 1950, for 24 days at $150 per day, in the sum of $3,600.

The contract was a two-year continuing contract to be completed on July 1, 1949. Plaintiff asked for and was granted two extensions—one for loss of the dredge "Ajax" by fire, and the other for additional time in which to rebuild the dredge because the replacement dredge was lost at sea in a storm. Plaintiff's time of completion was first extended to November 1, 1949, and the second extension to January 31, 1950.

Under subparagraph (b) of paragraph SC–1 "no work will be required during the period between 15 December and 15 March inclusive * * * no part of the period above designated will be considered in computing the time allowed for completion."

The defendant contends that when plaintiff asked for and was granted the extension to January 31, 1950, for the purpose of rebuilding the dredge destroyed by fire, the contract completion date was modified accordingly and that this modification resulted in the elimination of subparagraph (b) from paragraph SC–1 of the specifications.

The change order granting this extension states that "* * * the time for completion of your contract is hereby extended to 31 January 1950, Article I of the contract and paragraph SC–1 of the specifications being modified accordingly."

The modification referred to in the above change order obviously was intended to refer to subparagraph (a) of paragraph SE–1 and not to subparagraph

(b), leaving subparagraph (b) unmodified.

The plaintiff was clearly entitled to an extension of time to rebuild the dredge. This is conceded by the granting of the extension to January 31, 1950. Under the contract the needed extension of time necessary to rebuild the dredge was at least through December 15, 1949. The dredge was repaired during the interim period of December 15, 1949 to March 15, 1950. The plaintiff could not be charged under subparagraph (b) for this period.

■ Inasmuch as the period December 15 to March 15 was not to be included in determining the completion date, it would naturally follow that under the terms of the contract plaintiff could not be charged with liquidated damages during that period.

Defendant concedes that plaintiff was entitled to 19 days' extension for overrun of "common."

We think the proper method under the contract would be to add the 19 days' extension for overrun to the March 15 date when work was to be resumed. This would make the completion date April 3, 1950.

Since plaintiff was charged with liquidated damages for a period during which it was not required to work (24 days), it would be entitled to a remission in the amount of $3,600. A further remission for the 19 days' extension in the amount of $2,850 would also be due the plaintiff, making a total of $6,450.

Plaintiff's motion for summary judgment on the remission of liquidated damages claimed, in the amount of $6,450, is granted. Defendant's motion for summary judgment on the classification claim is granted, and that portion of plaintiff's petition is dismissed.

Judgment will be entered for plaintiff in the sum of $6,450.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.